2003-NMCA-075

70 P.3d 762

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

Erasmo ESPARZA, Defendant–Appellant.

State of New Mexico, Plaintiff–Appellee,

v.

Darren Booth, Defendant–Appellant.

State of New Mexico, Plaintiff–Appellant,

v.

Evan L. Reed, Defendant–Appellee.

State of New Mexico, ex rel. The Department of Public Safety, State Police Division, Plaintiff–Appellant,

v.

One 1978 Lincoln Continental Blue Bearing NM License CTJ353, VIN: 8689S907703, and $2,955.94 U.S. Currency, Defendant–Appellee.

Nos. 22,744, 23,118, 22,582.

Court of Appeals of New Mexico.

Feb. 20, 2003.

Certiorari Denied, No. 27,985, May 20, 2003 and No. 28,001, June 4, 2003.

774

Patricia A. Madrid, Attorney General, Jacqueline R. Medina, Assistant Attorney General, Santa Fe, NM, for Appellee in No. 22,744.

C. Barry Crutchfield, Templeman and Crutchfield, Lovington, NM, for Appellant in No. 22,744.

Patricia A. Madrid, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Appellee in No. 23,118.

John B. Bigelow, Chief Public Defender, Theresa M. Duncan, Assistant Appellate Defender, Santa Fe, NM, for Appellant in No. 23,118.

Patricia A. Madrid, Attorney General, Santa Fe, NM, M. Anne Kelly, Assistant Attorney General, Albuquerque, NM, for Appellant in No. 22,582.

Jesse R. Cosby, P.C., Roswell, N.M., for Appellee in No. 22,582.

## OPINION

WECHSLER, Chief Judge.

{1} Defendants Esparza, Booth, and Reed were charged with violations of the Controlled Substances Act (the Act), NMSA 1978, §§ 30–31–1 to –41 (1972, as amended through 2002). Pursuant to Section 30–31–34 of the Act, the State elected to pursue both criminal charges and civil forfeiture against each Defendant. We consolidated these cases on appeal because they require us to analyze our Supreme Court's decision in *State v. Nunez*, 2000–NMSC–013, 129 N.M. 63, 2 P.3d 264, in order to determine the circumstances under which the double jeopardy clause of the New Mexico Constitution, N.M. Const. art. II, § 15, prohibits the State from assessing both civil and criminal penalties against a defendant for violations of the Act.

{2} Based upon our conclusion that the State complied with the requirement that the penalties be sought in a single, bifurcated proceeding, we affirm the forfeiture of Defendant Esparza's $33,123.00 and the criminal conviction of Defendant Booth. *See Nunez*, 2000–NMSC–013, ¶ 104, 129 N.M. 63, 2 P.3d 264. We remand to the district court for trial of the complaint for forfeiture of Defendant Reed's 1978 Lincoln Continental and $2955.94.

*Background*

*State v. Esparza*

{3} While executing a search warrant in September 2000, officers from the Hobbs Police Department seized $33,123.00, along with approximately 230 grams of cocaine from Defendant Esparza's property. In October 2000, the State filed a criminal information, charging Defendant Esparza with

trafficking in a controlled substance and receiving stolen property. The information also contained a complaint for forfeiture of the currency that was seized during the search. An amended criminal information setting forth the same criminal charges and complaint for forfeiture was filed in March 2001.

{4} In June 2001, Defendant Esparza entered a plea of no contest to the charge of attempt to commit trafficking in a controlled substance. The plea agreement expressly stated: "[t]his agreement does not affect the forfeiture proceeding." (Emphasis in original). After accepting the plea, the district court indicated its intent to proceed with the forfeiture portion of the hearing. Defense counsel objected and moved to dismiss the complaint, arguing that principles of double jeopardy precluded the State from seeking forfeiture of the currency once the plea had been accepted. The district court denied the motion, then granted a continuance of the forfeiture hearing, which was ultimately held in July and August of 2001. In September 2001, the district court entered an order concluding that the forfeiture action had been brought in a "single bifurcated proceeding" as required by *Nunez*, 2000–NMSC–013, ¶ 104, 129 N.M. 63, 2 P.3d 264. In accordance with this conclusion, Defendant Esparza was ordered to forfeit the currency that was seized during the search.

{5} Defendant Esparza appeals from the forfeiture order, arguing that jeopardy attached upon acceptance of his plea and that the State was thereafter prohibited from pursuing forfeiture of the currency.

*State v. Booth*

{6} Defendant Booth was indicted for possession of marijuana with intent to distribute in March 2000. Three days after the indictment was filed, the State filed a motion to forfeit Defendant Booth's vehicle, a 1988 GMC pickup truck, under the same cause number as the criminal indictment. Accordingly, the forfeiture motion was directed to the same district judge who was assigned to the criminal prosecution. In April 2000, Defendant Booth appeared for arraignment on the criminal charges and entered a plea of

not guilty. After posting bond and receiving permission to travel to Utah, Defendant Booth absconded.

{7} In August 2000, the State obtained a criminal summons, directing Defendant Booth to file a response to the motion to forfeit. However, the summons could not be served because the State was unable to locate Defendant Booth at his last known address in Utah. In January 2001, the State filed an affidavit for service by publication of the forfeiture motion. Publication was completed in New Mexico in February 2001. Defendant Booth was arrested on a bench warrant in May 2001, but never responded to the motion to forfeit. Following the arrest, the State filed and the district court granted a motion for default judgment on the forfeiture. Judgment was entered in June 2001.

{8} In September 2001, Defendant Booth filed a motion to dismiss with prejudice the criminal charges against him, arguing that the entry of default judgment in the forfeiture action precluded the State from thereafter proceeding with the criminal prosecution. At the hearing on the motion, the district court judge encouraged Defendant Booth to move to set aside the default judgment. Defendant Booth refused, electing to seek dismissal of the criminal charges on double jeopardy grounds. The district court, however, denied Defendant Booth's motion, stating that the requirement of a single, bifurcated proceeding was satisfied because the State had sought the penalties "together in one proceeding, close in time, and not in separate lawsuits or actions." In November 2001, Defendant Booth pleaded guilty to the charge of possession of marijuana with intent to distribute, but expressly reserved the right to appeal the district court's denial of his motion to dismiss. The judgment and sentence was entered in March 2002, more than nine months after entry of the default judgment.

{9} Defendant Booth appeals his criminal conviction on double jeopardy grounds, arguing that the district court's entry of default judgment on the forfeiture matter prohibited the State from thereafter pursuing his criminal prosecution. Specifically, he maintains that the procedures used by the State failed

to satisfy the requirement of a single, bifurcated proceeding and therefore violated his double jeopardy rights.

### DPS v. One 1978 Lincoln

{10} In October 2000, Defendant Reed was arrested in Chaves County and charged with possession of more than eight ounces of marijuana or, in the alternative, possession with intent to distribute. In November 2000, Albert Fugere, a special assistant attorney general acting as deputy chief counsel for DPS, filed a complaint for forfeiture of Defendant Reed's 1978 Lincoln Continental and $2955.94 in the district court for Santa Fe County. Later that month, the district attorney's office filed a criminal information setting forth the criminal charges against Defendant Reed in Chaves County. On January 2, 2001, Mr. Fugere filed a motion to consolidate the criminal prosecution and the forfeiture proceeding in order to insure compliance with the double jeopardy requirements set forth in *Nunez*. After determining that consolidation was "required to avoid double jeopardy issues," the district court in Santa Fe County issued an order granting the motion. The consolidation order was subsequently filed with the district court in Chaves County.

{11} Following several continuances, granted at the request of both defense counsel and the deputy district attorney, trial was set for July 17, 2001. Mr. Fugere never received notice of the trial setting and thus was not present on the day of the trial. Immediately before jury selection was to begin, Defendant Reed reached a plea agreement with the deputy district attorney. Defense counsel subsequently informed the district court of Mr. Fugere's absence and stated that Defendant Reed would be willing to plead guilty, contingent upon the district court's ruling that the civil case be dismissed due to DPS's inability to go forward with trial. The deputy district attorney, who was assigned to try only the criminal portion of the case, attempted to object to the dismissal of the forfeiture complaint on Mr. Fugere's behalf. However, the district court refused to hear the objection and granted the motion to dismiss based upon

DPS's failure to prosecute. It then accepted Defendant Reed's plea to the criminal charge. The order of dismissal was filed on July 25, 2001, and DPS filed its notice of appeal on August 24, 2001. The judgment and sentence on the criminal charge was not filed until September 10, 2001.

{12} DPS appeals the district court's order dismissing the forfeiture complaint for failure to prosecute, arguing that DPS did not receive notice and an opportunity to be heard prior to the dismissal of its complaint. In addition, DPS argues that principles of double jeopardy, as interpreted by our Supreme Court in *Nunez*, did not require the dismissal of the forfeiture action following the district court's acceptance of Defendant Reed's guilty plea because the forfeiture complaint and criminal charges were brought in a single, bifurcated proceeding.

### Standard of Review

{13} Because the underlying facts of these consolidated cases are not in dispute, we review the legal issues presented de novo. *See City of Albuquerque v. One 1984 White Chevy Ut.*, 2002–NMSC–014, ¶ 5, 132 N.M. 187, 46 P.3d 94 (stating that appellate courts review issues under de novo standard when there are no disputed material facts).

### Attachment of Jeopardy

{14} As a preliminary matter, we address Defendants' arguments regarding the events that signal the attachment of jeopardy. Defendant Esparza argues that jeopardy attaches upon a court's acceptance of a plea of guilty or no contest. In support of this assertion, he cites to *Nunez*, in which our Supreme Court stated that "[i]n the case of a guilty plea or plea of nolo contendere, jeopardy attaches at the time the court accepts the defendant's plea." *Nunez*, 2000–NMSC–013, ¶ 28, 129 N.M. 63, 2 P.3d 264.

{15} Although the language cited by Defendant Esparza appears to be unequivocal, any determination of when jeopardy attaches in plea proceedings was unnecessary to our Supreme Court's disposition in *Nunez*. *State v. Angel*, 2002–NMSC–025, ¶ 8, 132 N.M. 501, 51 P.3d 1155. Therefore, "the question of when jeopardy attaches to a guilty plea or

plea of nolo contendere remains unanswered in New Mexico." *Id.* ¶ 9.

{16} Subsequent to *Nunez,* our Supreme Court has held that jeopardy does not attach when a court accepts a no contest plea and then dismisses the charges prior to sentencing. *Angel,* 2002–NMSC–025, ¶ 16, 132 N.M. 501, 51 P.3d 1155. In addition, our Supreme Court has strongly suggested that entry of sentence, rather than acceptance of a plea, constitutes the event at which jeopardy attaches. *Id.* ¶ 10. Thus, while there has been no explicit indication of what event signals the attachment of jeopardy within the context of a plea agreement, we believe, based on *Angel,* that jeopardy does not attach upon the acceptance of a plea.

{17} Defendant Booth places similar emphasis on his arguments regarding the attachment of jeopardy. Unlike acceptance of a plea, a determination of when jeopardy attaches in default judgment proceedings was necessary to our Supreme Court's disposition in *Nunez. See Nunez,* 2000–NMSC–013, ¶ 103, 129 N.M. 63, 2 P.3d 264. Therefore, it is now settled that jeopardy attaches upon a court's entry of default judgment. *Id.* Nevertheless, the mere recognition that jeopardy attaches upon the occurrence of a certain event does not automatically implicate constitutional double jeopardy protections. Rather, pursuant to *Nunez,* a penalty may be assessed against a defendant even after the occurrence of an event that triggers the attachment of jeopardy, provided all penalties were sought in a "single, bifurcated proceeding." *See id.* ¶ 104.

*Single Bifurcated Proceeding Requirement*

{18} The double jeopardy clause of the New Mexico Constitution does not prohibit the Legislature from assessing both civil and criminal penalties for violations of the Act. *Id.* ¶ 49. However, if the State elects to seek both criminal conviction and the forfeiture of assets, the penalties must be pursued in a single, bifurcated proceeding. *Id.* ¶ 104.

{19} Defendants assert that the State failed to comply with the requirement of a single, bifurcated proceeding. Specifically, Defendant Esparza challenges the district court's trial of the forfeiture matter following acceptance of his plea. Similarly, Defendant Booth argues that the district court erred when it entered default judgment on the forfeiture and then allowed the State to proceed with his criminal prosecution. Defendant Reed asserts that dismissal of DPS's complaint for forfeiture was appropriate because DPS attempted to "subvert" the holding in *Nunez* by filing the complaint in Santa Fe County and subsequently moving for consolidation with the criminal proceedings in Chaves County.

{20} Based upon its express requirement of a "bifurcated" proceeding, we do not believe that *Nunez* stands for the proposition that a criminal prosecution may never advance independently of the forfeiture proceeding. Rather, *Nunez* appears to mandate only proper initiation of the dual penalty proceeding, meaning that the criminal charges and the forfeiture proceeding must be merged or consolidated prior to the occurrence of any event that signals the attachment of jeopardy. Our Supreme Court stated that

> if the civil forfeiture is pursued first, resulting in either a trial or a default judgment, the double-jeopardy defense would arise upon the subsequent initiation of a criminal proceeding. Conversely, if the defendant is first subjected to a criminal prosecution, the double jeopardy defense would be triggered at the moment the state commenced a subsequent forfeiture action.

*Nunez,* 2000–NMSC–013, ¶ 31, 129 N.M. 63, 2 P.3d 264. Thus, once the proceedings have been properly initiated, a decision by a district court to dispose of either the forfeiture claim or the criminal charges prior to resolution of the entire case will not foreclose the imposition of the remaining penalty.

{21} Our determination that a criminal prosecution may advance independently of a forfeiture proceeding is consistent with the purposes underlying bifurcation. Bifurcation is designed to facilitate the expeditious and economical resolution of cases that involve disparate procedural or substantive issues. *See* Rule 1–042 NMRA 2003; *Nunez,*

2000–NMSC–013, ¶ 105, 129 N.M. 63, 2 P.3d 264 (stating that bifurcation is the only mechanism under existing law that can be used to deal with the factually identical but procedurally distinct aspects of a combined criminal prosecution and civil forfeiture). Thus, trials are generally bifurcated based upon a recognition that judicial resources will be preserved if specific issues are separately tried. *See Bolton v. Bd. of County Comm'rs*, 119 N.M. 355, 361, 890 P.2d 808, 814 (Ct.App. 1994). If, as suggested by Defendant Esparza, a court were required to simultaneously resolve the criminal charges and the forfeiture matter, the clear policies underlying the use of bifurcated proceedings would be undermined. In addition, such a requirement would impermissibly interfere with the inherent ability of district judges to manage their dockets and to expedite the flow of cases through the courts. *See State v. Ahasteen*, 1998–NMCA–158, ¶ 28, 126 N.M. 238, 968 P.2d 328 (recognizing power of district courts to control movement of cases from filing to final disposition).

{22} Accordingly, we do not believe that *Nunez* requires, as argued by Defendant Booth, that the criminal charges and forfeiture matter be resolved in "one trial at which all issues of fact are decided and [resulting in] one judgment in which all punishments are given." *Nunez* does not require a single trial, but rather a single proceeding. *Nunez*, 2000–NMSC–013, ¶ 104, 129 N.M. 63, 2 P.3d 264. Although the opinion contains references to a single trial, the express mandate of *Nunez* is limited to the requirement of a single, bifurcated proceeding. Similarly, *Nunez* does not dictate that a dual penalty proceeding must culminate in a single judgment. Although it may be more pragmatic, particularly for purposes of appeal, to withhold the entry of judgment on either the criminal charges or the forfeiture matter until both proceedings have been fully resolved, nothing in *Nunez* mandates such a procedure.

{23} Finally, Defendant Booth suggests that the legislature's adoption of NMSA 1978, Section 31–27–6(C)(2002) (requiring the bifurcated issues of the criminal charges and the forfeiture to be presented to the same trier of fact), supports his argument that *Nunez* requires a single trial and single judgment. We do not agree. The *Nunez* opinion itself cited *State v. Luna*, 93 N.M. 773, 779, 606 P.2d 183, 189 (1980), as an example of bifurcation. *Nunez*, 2000–NMSC–013, ¶ 105 n. 32, 129 N.M. 63, 2 P.3d 264. *Luna* contemplates two separate stages of a trial that might not even be tried before the same jury. *Luna*, 93 N.M. at 779, 606 P.2d at 189. In addition, the statute does not appear to contemplate resolution of either or both of the bifurcated issues without a trial. Yet, we know that the vast majority of legal proceedings, including each of the proceedings before us, are resolved without a trial. Thus, neither *Nunez* nor the constitution requires simultaneous proceedings.

{24} In accordance with these principles, we must now determine whether, in the present cases, the State complied with the requirement that the criminal prosecution and the forfeiture of assets be pursued in a single, bifurcated proceeding.

■ {25} With regard to Defendant Esparza, both the original and the amended criminal information set forth the forfeiture claim along with the criminal charges. The penalties were sought under the same case number and were assigned to the same judge. *See State ex rel. Schwartz v. Kennedy*, 120 N.M. 619, 626, 904 P.2d 1044, 1051 (1995) (discussing characteristics of separate proceedings). Therefore, it is clear that the forfeiture proceeding was initiated prior to the occurrence of any event that might have triggered the attachment of jeopardy, including entry of judgment and sentence on the plea.

{26} In addition, the policies underlying the prohibition against double jeopardy were not implicated in this case. Defendant Esparza had clear notice of the dual penalties facing him and therefore had no expectation of finality upon the district court's acceptance of his plea. *See Angel*, 2002–NMSC–025, ¶ 15, 132 N.M. 501, 51 P.3d 1155 (recognizing that the expectation of finality and tranquility is an interest protected by the prohibition on double jeopardy). The State did not receive multiple opportunities to rehearse its trial strategy. *See id.* Defendant Esparza

was not subjected "to the expense, embarrassment and ordeal of repeated trials." *State v. Lujan,* 103 N.M. 667, 671, 712 P.2d 13, 17 (Ct.App.1985). Thus, Defendant Esparza's double jeopardy rights were not violated.

{27} With regard to Defendant Booth, the State likewise complied with the requirement that the criminal prosecution and forfeiture of assets be pursued in a single, bifurcated proceeding. Although the forfeiture motion was not included in Defendant Booth's indictment, it was filed three days later under the same cause number and was directed to the same district judge. We agree with Defendant Booth that the mere act of assignment of a docket number is insufficient, of itself, to demonstrate that the penalties were sought in a single, bifurcated proceeding. *See Village of Deming v. Marquez,* 74 N.M. 747, 749, 398 P.2d 266, 267 (1965)(holding that mere fact that clerk assigned defendant's case a civil docket number did not demonstrate that the district court failed to treat the case as a criminal matter). However, the initiation of all proceedings in the same case prior to the entry of default judgment, and the fact that the proceedings were overseen by the same district judge, support our determination that Defendant Booth was not subjected to multiple proceedings in contravention of the double jeopardy clause.

{28} In addition, Defendant Booth was on notice of the dual penalties facing him before either of the proceedings was resolved and, like Defendant Esparza, had no expectation of finality upon the resolution of the forfeiture motion. *See Angel,* 2002–NMSC–025, ¶ 15, 132 N.M. 501, 51 P.3d 1155. Although the forfeiture motion was served by publication in what was arguably the incorrect jurisdiction, Defendant Booth failed to challenge the procedures used by the State, even after being advised by the district court to do so. Furthermore, the State was not afforded multiple opportunities to rehearse its trial strategy, and Defendant Booth was not repeatedly subjected " 'to the expense, embarrassment and ordeal of repeated trials.' " *Id.* (quoting *Lujan,* 103 N.M. at 671, 712 P.2d at 17). Thus, the purposes underlying the prohibition on double jeopardy would not have been served by a dismissal of Defendant Booth's criminal charges.

{29} Finally, the district court invited Defendant Booth to move to set aside the default judgment entered against him at the hearing on the motion to dismiss. Predictably, he declined to do so in an effort to prevent the continuation of his criminal prosecution. We do not believe that the Supreme Court in *Nunez* intended to create a procedure by which defendants would be permitted to selectively determine their punishment. The interests served by the prohibition on double jeopardy would be perverted if purveyors of controlled substances were able to avoid criminal conviction and the accompanying consequences by electing instead to forfeit assets.

{30} With regard to Defendant Reed, the State also pursued the criminal charge and forfeiture of assets in a single, bifurcated proceeding. Although the proceedings were initially filed in different judicial districts, the State effected the consolidation of the matters prior to the entry of judgment and sentence on the criminal charge, which was the event that signaled the attachment of jeopardy in this case. Following consolidation of the proceedings, the matters were set to be heard under the same case number, before the same judge, and on the same day. Therefore, there was but a single proceeding in Defendant Reed's case as well.

{31} We recognize that the Court in *Nunez* expressly rejected "any attempt to contrive an identity between the two proceedings such as that set forth in *United States v. Millan,* 2 F.3d 17, 20 (2d Cir.1993)." *Nunez,* 2000–NMSC–013, ¶ 55, 129 N.M. 63, 2 P.3d 264. *Millan* is distinguishable from the facts of the present cases. First, nearly four-and-one-half months passed between the filing of the criminal charges and the initiation of the forfeiture suit in *Millan.* By contrast, less than one month passed between the initiation of the criminal charges and the forfeiture proceedings in any of the present cases. The forfeiture action against Defendant Esparza was initiated simultaneously with the crimi-

nal prosecution, and the forfeiture proceeding against Defendant Booth was commenced within three days of the filing of his indictment.

{32} Second, there was no indication in *Millan* that the criminal prosecution and forfeiture proceeding were to be overseen by the same judge. In fact, the civil and criminal actions were filed separately with their own docket numbers. *Millan*, 2 F.3d at 20. In the present cases, the criminal charges and forfeiture proceedings were either brought in the same pleading or formally consolidated under the same cause number and were assigned to the same district judge.

{33} Finally, unlike the federal government in *Millan*, it is clear that the State in each of these consolidated cases endeavored, in good faith, to comply with the requirement of a single proceeding. We do not, therefore, view our analysis as an "attempt to contrive an identity between the two proceedings," as prohibited by the Court. *Nunez*, 2000–NMSC–013, ¶ 55, 129 N.M. 63, 2 P.3d 264. Rather, we believe that the unity of the two proceedings is apparent, given the circumstances of each of these consolidated cases.

{34} As anticipated by our Supreme Court, the requirement of a single, bifurcated proceeding has led to logistical complexities. *Id.* ¶ 105. The present appeals are illustrative of the procedural uncertainty that has developed as a result of *Nunez*. While the procedures chosen to initiate the dual penalty proceedings in these cases were certainly not without flaws, the State at all times manifested its intent to comply with the single, bifurcated proceeding requirement and provided Defendants with notice of the penalties to which they were subject. We do not believe that, under the circumstances, the State should be denied its right to a full and fair opportunity to convict those who have violated the law. *See Angel*, 2002–NMSC–025, ¶ 15, 132 N.M. 501, 51 P.3d 1155.

*Appellate Jurisdiction—Defendant Reed*

{35} Based upon our determination that the State pursued criminal charges and civil forfeiture against Defendant Reed in a single, bifurcated proceeding, we must now consider whether we have jurisdiction to review the district court's dismissal of DPS's forfeiture complaint for failure to prosecute.

{36} Absent an express statute or rule to the contrary, a party may only appeal from a final judgment. *State v. Durant*, 2000–NMCA–066, ¶ 5, 129 N.M. 345, 7 P.3d 495. As a general rule, a judgment "is not considered final unless all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible." *Id.* ¶ 7 (internal citation and quotation marks omitted).

{37} In this case, DPS filed its notice of appeal from the district court's dismissal of the forfeiture complaint prior to the entry of judgment and sentence on the criminal charges. Because the penalties were properly initiated as a single, bifurcated proceeding, it is possible that a final judgment had yet to be entered in the case and that DPS's appeal was therefore premature. *See id.* ¶ 5 (recognizing that a criminal prosecution is not complete until a sentence has been imposed).

{38} Nevertheless, regardless of whether finality existed for purposes of appellate review, we believe that "little would be accomplished, other than incurring additional delay and further expense, in remanding this case back to the [district] court" for the purpose of requiring DPS to file a new notice of appeal. *See Peterson v. Peterson*, 98 N.M. 744, 746, 652 P.2d 1195, 1197 (1982)(declining to remand case to district court for the sole purpose of requiring the court to enter findings and conclusions, even though the failure to enter such findings and conclusions was a technical error). If we decline to examine the substance of DPS's claim at this time, "we would merely be postponing the inevitable" because upon remand to the district court, DPS would merely file a new notice of appeal, thereby redirecting the proceeding to this Court. *See In re Estate of Harrington*, 2000–NMCA–058, ¶¶ 8–11, 129 N.M. 266, 5 P.3d 1070 (reviewing appellant's claim, despite technical lack of jurisdiction, based upon determination that claim would unquestionably reappear in subsequent appeal).

{39} Although we continue to "insist upon compliance with the Rules of . . . Procedure," *Peterson*, 98 N.M. at 746, 652 P.2d at 1197,

we have before us the information necessary to facilitate our review of the dismissal of the forfeiture complaint for failure to prosecute. The judgment and sentence on the criminal charges is included in the record proper that was filed with this Court. Both DPS and Defendant Reed fully addressed the dismissal in their appellate briefs. Furthermore, neither party raised the issue of finality on appeal. Given the unique facts of this case, we believe there is good reason to address DPS's claim of error at this time. *See Harrington*, 2000–NMCA–058, ¶ 9, 129 N.M. 266, 5 P.3d 1070; *Ahasteen*, 1998–NMCA–158, ¶ 10, 126 N.M. 238, 968 P.2d 328 (reiterating that finality rule is "to be given a practical, rather than a technical, construction." (internal citation and quotation marks omitted)).

*Dismissal for Failure to Prosecute—Defendant Reed*

{40} DPS argues that the district court erred by ordering the dismissal of its forfeiture complaint against Defendant Reed for failure to prosecute. Specifically, DPS contends that the court failed to provide notice and an opportunity to be heard prior to dismissing the complaint.

{41} District courts have inherent power to dismiss a case for failure to prosecute. *Smith v. Walcott*, 85 N.M. 351, 354, 512 P.2d 679, 682 (1973). We review such dismissals for abuse of discretion. *See Stoll v. Dow*, 105 N.M. 316, 319, 731 P.2d 1360, 1363, (1986).

{42} A party must receive notice and an opportunity to be heard before a case can be involuntarily dismissed on the merits. *Universal Constructors, Inc. v. Fielder*, 118 N.M. 657, 660, 884 P.2d 813, 816 (Ct.App. 1994). Defendant Reed acknowledges that Mr. Fugere, deputy chief counsel for DPS, did not receive individual notice of the July 17, 2001, trial setting. However, Defendant Reed argues that, upon consolidation of the criminal charges and forfeiture complaint in Chaves County, the district attorney acquired sole responsibility for the trial of both matters. Because the district attorney became the sole representative of the State in the consolidated proceedings, Defendant Reed maintains that Mr. Fugere was no longer entitled to individual notice.

{43} Even assuming that Defendant Reed correctly states that counsel for DPS was not entitled to individual notice of the proceedings, the district court failed to afford either attorney for the State an opportunity to be heard prior to ordering dismissal of the forfeiture complaint. The deputy district attorney attempted to object to Defendant Reed's request for dismissal on Mr. Fugere's behalf, but was prevented from doing so by the district court. Indeed, the court refused to hear the deputy district attorney, but stated that the record would reflect his "strenuous objections."

{44} Although no particular procedure is critical when determining whether a party has been afforded the opportunity to be heard, we are primarily concerned with the integrity and fairness of the process. *Bagwell v. Shady Grove Truck Stop*, 104 N.M. 14, 17–18, 715 P.2d 462, 465–66 (Ct. App.1986). The district court did not entertain any argument, whether written or oral, prior to ordering the dismissal of DPS's forfeiture complaint. Under these circumstances, DPS was denied an opportunity to be heard. *Cf. id.* (concluding that defendants were afforded a reasonable and fair opportunity to be heard, despite court's refusal to hear oral argument on their opposition to plaintiff's motion to amend, because they filed written argument prior to the court's ruling and were allowed to argue their position at a later hearing).

{45} Thus, by dismissing without hearing the deputy district attorney's objection, the district court abused its discretion in ordering the dismissal of the forfeiture complaint for failure to prosecute. We reverse the dismissal and, in accordance with our determination that the penalties were sought in a single, bifurcated proceeding, remand to the district court for trial of the forfeiture issue.

*Conclusion*

{46} Based upon our determination that the State pursued the criminal prosecution and forfeiture of assets in a single, bifurcated proceeding, we affirm the forfeiture of De-

fendant Esparza's $33,123.00 and the criminal conviction of Defendant Booth. We reverse and remand to the district court for trial of the complaint for forfeiture of Defendant Reed's 1978 Lincoln Continental and $2955.94.

{47} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and LYNN PICKARD, Judges.