2008-NMCA-120

192 P.3d 792

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Richard CANDELARIA, Defendant–Appellant.**

**No. 27,675.**

Court of Appeals of New Mexico.

July 30, 2008.

798

to the district court, which reversed. Defendant then appealed to this Court. We reverse and remand for reinstatement of the metropolitan court order of dismissal.

## BACKGROUND

{2} Officer Picchione of the Albuquerque Police Department filed a complaint in the metropolitan court on June 23, 2005, charging Defendant with battery of a household member (his father-in-law) following an incident that occurred when Defendant, who was separated from his wife, was in the process of removing some property from the former marital home. Officer Picchione wrote a report and filed the complaint after speaking with Defendant's wife and father-in-law.

{3} A jury trial was set for November 1, 2005. The State filed a "Notice of Intent to Call Witnesses" stating it intended to call Defendant's wife, Defendant's father-in-law, and Officer Picchione as witnesses at the trial. The State was prepared to proceed with the trial, but Defendant moved for a continuance because a defense witness, who was not subpoenaed, was not present. The continuance was granted, and the trial was rescheduled.

{4} At the next trial setting on December 13, 2005, the State moved for a continuance because Officer Picchione was not present. Stating that he also required Officer Picchione's presence, Defendant did not oppose the State's motion. Upon inquiry from the metropolitan court as to whether the parties required subpoenas, Defendant said he would subpoena the defense witnesses and asked the prosecutor if he was going to have to subpoena Officer Picchione as well. The prosecutor stated, "We'll go ahead and subpoena the officer." The State never subpoenaed Officer Picchione.

{5} The first trial commenced on January 4, 2006. However, a mistrial was declared after the State's first witness (Defendant's father-in-law) violated a pretrial ruling on a motion in limine. The metropolitan court had cautioned the State to instruct its witnesses about its ruling and that a violation of the ruling would be grounds for a mistrial. The second trial commenced on January 25, 2006, and another mistrial was declared on the same basis when the State's first witness

Gary K. King, Attorney General, Santa Fe, NM, Ralph E. Trujillo, Assistant Attorney General, Albuquerque, NM, for Appellee.

Hugh W. Dangler, Chief Public Defender, Santa Fe, NM, Linda Yen, Assistant Public Defender, Albuquerque, NM, for Appellant.

## OPINION

VIGIL, Judge.

{1} The metropolitan court dismissed the case against Defendant after two mistrials were caused by the State's witnesses and after a police officer, who was a key witness for both the State and Defendant, failed to appear for the third scheduled trial when the State failed to subpoena him after representing that it would do so. The State appealed

(this time Defendant's wife) violated the same pretrial ruling. Trial was re-set to commence on March 10, 2006, with the metropolitan court stating this would be the last such setting.

{6} On March 7, 2006, Defendant filed a motion to dismiss based on double jeopardy, prosecutorial misconduct, and speedy trial grounds. At the March 10, 2006 setting, the State requested a continuance, stating that Officer Picchione was not present due to a lung and throat infection and because it wanted additional time to respond to Defendant's motion to dismiss. The metropolitan court granted the State's request over Defendant's objection and set a motion hearing for March 29, 2006.

{7} During the motion hearing on March 29, 2006, the metropolitan court expressed concern about the protracted course of the proceedings. There was also discussion about Officer Picchione's illness that necessitated a continuance of the March 10, 2006 setting. The metropolitan court specifically asked, "Is he able to come to court now? Is this stale information?" In response, the prosecutor answered, "I believe that's stale information. He couldn't come to court on that day." The metropolitan court said, "Alright, so this whole business of Officer Picchione—Everybody's available for trial now?" The prosecutor represented, "Everyone's available for trial, your honor. I've kept in regular contact with them and let them know, kept them informed of what's going on." The metropolitan court denied Defendant's motion to dismiss. However, the court also warned, "I'm going to reset the case for trial, and we'll get to try it once and for all. If the State has another problem with its witnesses testifying to things they are directed not to, then I'll dismiss it with prejudice and impose sanctions if necessary."

{8} The case was called for trial a third time on May 3, 2006. Officer Picchione was not present. Defense counsel asserted that Officer Picchione's absence was damaging to the defense and made an offer of proof that aspects of his report had exculpatory value and that his testimony was required to impeach the State's other witnesses. Defense counsel further stated that she had not sub-poenaed Officer Picchione because the State had previously represented that it was going to insure his presence at the trial. Upon inquiry by the metropolitan court, the prosecutor acknowledged both the potential exculpatory value of Officer Picchione's testimony and his prior assurances that he would procure Officer Picchione's presence at the trial. The prosecutor then explained that he did not know until the morning of trial that Officer Picchione was at a doctor's appointment and that efforts to contact Officer Picchione had been unsuccessful. The State asserted, nevertheless, that it was prepared to proceed to trial without Officer Picchione's testimony.

{9} In light of Officer Picchione's absence, Defendant moved to either suppress all evidence that might have been impeached by Officer Picchione's testimony or to dismiss. After hearing the arguments of counsel, the metropolitan court granted Defendant's motion and dismissed. In its final judgment, the court stated that the two prior mistrials combined with Officer Picchione's failure to appear at the third scheduled trial, supplied the grounds for the dismissal of the proceedings.

{10} The State appealed the dismissal to the district court. *See* NMSA 1978, § 34–8A–6(C) (1993) (providing that in criminal actions involving "domestic violence" as defined, the metropolitan court is a court of record and that a party aggrieved by a judgment of the metropolitan court in such an action may appeal to the district court). Sitting as an appellate court, the district court concluded that the metropolitan court abused its discretion when it dismissed the State's case and reversed. The district court gave three reasons for its conclusion: (1) it was Defendant's duty to make sure Officer Picchione had been subpoenaed if his testimony was critical to his defense, (2) the proper remedy was to continue the trial to allow Defendant to subpoena Officer Picchione, and (3) Defendant would not have been prejudiced had the case proceeded to trial in Officer Picchione's absence.

{11} Defendant appeals from the order of the district court. *See* Rule 7–703(R) NMRA ("An aggrieved party may appeal from a

judgment of the district court to the New Mexico Supreme Court or New Mexico Court of Appeals, as authorized by law, in accordance with the Rules of Appellate Procedure."). The State argues that we should arrive at the same conclusion as the district court for the same three reasons expressed by that court. We decline to do so. Accordingly, we reverse the order of the district court and reinstate the final judgment of the metropolitan court.

## STANDARD OF REVIEW

{12} The district court was sitting as an appellate court in this case. *See State v. Foster,* 2003–NMCA–099, ¶ 9, 134 N.M. 224, 75 P.3d 824 (stating that if an appeal from the magistrate court in the district court is on the record, the district court acts as a typical appellate court). The issue decided by the district court was whether the dismissal was properly ordered by the metropolitan court. A metropolitan court is vested with the inherent authority to sanction parties in furtherance of controlling its docket and the proceedings that come before it. *See In re Jade G.,* 2001–NMCA–058, ¶¶ 27–28, 130 N.M. 687, 30 P.3d 376. An appellate court reviews dismissal of a criminal case based on this inherent power for an abuse of discretion. *See State v. Esparza,* 2003–NMCA–075, ¶ 41, 133 N.M. 772, 70 P.3d 762 (observing that dismissal pursuant to inherent authority is reviewed for abuse of discretion); *State v. Lopez,* 99 N.M. 385, 388, 658 P.2d 460, 463 (Ct.App.1983) ("We hold that the trial court exercised its inherent power to dismiss, and that its ruling was not against logic or effect of the State's representations at the time the motion to dismiss was granted."), *cert. denied,* 464 U.S. 831, 104 S.Ct. 111, 78 L.Ed.2d 113 (1983). The district court's review of the metropolitan court's discretion does not turn on whether the district court would have arrived at the same result, *see State v. Ferguson,* 111 N.M. 191, 195, 803 P.2d 676, 680 (Ct.App.1990), and the district court could only conclude that the metropolitan court abused its discretion if it could characterize its ruling as "clearly untenable or not justified by reason." *State v. Rojo,* 1999–NMSC–001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). In performing its review,

the district court is required to view the evidence, and its inferences, in the light most favorable to the metropolitan court's decision. *See State v. Rael,* 2008–NMCA–067, ¶ 6, 144 N.M. 170, 184 P.3d 1064.

{13} Our standard of review is identical-did the metropolitan court abuse its discretion in accordance with the foregoing standards when it ordered a dismissal of the criminal charge under its inherent authority to control the orderly and expeditious disposition of its cases?

## DISCUSSION

{14} "Inherent judicial power is the power necessary to exercise the authority of the court." *In re Jade G.,* 2001–NMCA–058, ¶ 27, 130 N.M. 687, 30 P.3d 376. "This authority embraces the ability of a court to control its docket and the proceedings before it." *Id.* The authority of the court to control its docket encompasses the power to "supervise and control the movement of all cases on its docket from the time of filing through final disposition, and to apply sanctions when reasonable efforts to manage the court's caseload have failed." *State v. Ahasteen,* 1998–NMCA–158, ¶ 28, 126 N.M. 238, 968 P.2d 328 (internal quotation marks and citations omitted). Furthermore, when the State is not ready to proceed because of a missing witness it did not subpoena, this inherent power allows a trial court to dismiss a prosecution. *See Lopez,* 99 N.M. at 387–88, 658 P.2d at 462–63 (recognizing that trial courts have an inherent power in the orderly and expeditious disposition of their cases to dismiss where the prosecution is not ready to proceed because of a missing witness).

{15} As described at greater length in the background section of this opinion, the metropolitan court struggled to control the course of the proceedings in this case and to ensure the expeditious resolution of the pending charges. Only after the State repeatedly failed to control its witnesses, causing multiple mistrials and re-settings, did the metropolitan court conclude that sanctions were in order. This basic determination was not an abuse of discretion. The State also failed to abide by its representations to the metropolitan court and Defendant on Decem-

ber 13, 2005, that it would subpoena Officer Picchione for trial. As discussed at greater length below, when Officer Picchione was not subpoenaed and he did not appear, the State's inaction effectively prevented the third-scheduled trial from proceeding. Thus, the metropolitan court acted reasonably in faulting the State, rather than the defense, for the officer's absence from the trial five months later on May 3, 2006. *See State v. Torres*, 1999–NMSC–010, ¶ 11, 127 N.M. 20, 976 P.2d 20 (declining to fault the defense for failing to subpoena a witness where the record indicated that the fault lay with the sheriff's department). When the State decided not to subpoena Officer Picchione for trial, it should have, at the very least, informed Defendant in time so he could subpoena Officer Picchione. *See State v. Bartlett*, 96 N.M. 415, 418, 631 P.2d 321, 324 (Ct.App.1981) ("As an officer of the court a prosecutor carries a heavy responsibility to both the court and the accused to conduct a fair trial .... he should not take unfair advantage of the defendant." (internal quotation marks and citation omitted)). Perceiving a lack of due diligence, a dereliction of responsibility, and a disregard for the integrity of the process, the metropolitan court did not abuse its discretion in determining that harsh sanctions were in order. *See In re Jade G.*, 2001–NMCA–058, ¶ 28, 130 N.M. 687, 30 P.3d 376 (explaining that a court may use its inherent authority to "sanction parties and attorneys to ensure compliance with the proceedings of the court").

▆▆▆ {16} The type of sanction to be imposed in any given case is essentially discretionary with the court. *See United Nuclear Corp. v. Gen. Atomic Co.*, 96 N.M. 155, 239, 629 P.2d 231, 315 (1980) ("[T]he choice of sanctions ... lies within the sound discretion of the trial court."). However, this inherent power is not unfettered particularly where dismissal is ordered. *State v. Hicks*, 105 N.M. 286, 287, 731 P.2d 982, 983 (Ct.App. 1986). "A party must receive notice and an opportunity to be heard before a case can be involuntarily dismissed on the merits." *Esparza*, 2003–NMCA–075, ¶ 42, 133 N.M. 772, 70 P.3d 762; *see also State v. Wilson*, 116 N.M. 802, 806, 867 P.2d 1184, 1188 (Ct.App. 1993) ("[B]efore the court can dismiss a crim-

inal prosecution with prejudice, it must give the State advance notice."). In this case, the State received two warnings from the metropolitan court that it would not re-set the trial if the State's witnesses presented further problems. This satisfied the notice requirement. Additionally, the metropolitan court allowed the parties to present their arguments prior to dismissing the case. As a result, the State had the opportunity to be heard. We are therefore satisfied by the essential "integrity and fairness of the process." *Esparza*, 2003–NMCA–075, ¶ 44, 133 N.M. 772, 70 P.3d 762.

**Alternative Sanctions**

▆▆▆ {17} In the course of its argument to the metropolitan court, the State suggested either that a continuance be granted or that the trial proceed in Officer Picchione's absence. Courts are generally encouraged to consider lesser sanctions before electing dismissal. *See Jackson*, 2004–NMCA–057, ¶ 15, 135 N.M. 689, 92 P.3d 1263 (observing that the sanction of dismissal should be imposed only where less severe sanctions would not provide an adequate remedy); *Wilson*, 116 N.M. at 807, 867 P.2d at 1189 (observing that "it would be advisable to consider lesser sanctions before proceeding to the extreme sanction of dismissal"). However, for the reasons that follow, it was not an abuse of discretion for the metropolitan court to conclude that neither of the State's suggested approaches provided an adequate remedy.

{18} With respect to the requested continuance, it is noteworthy that the State's previous failures to insure that its witnesses complied with evidentiary rulings had already caused significant delays. The metropolitan court clearly expressed its concern about this state of affairs and repeatedly warned that the trial would not be re-set to accommodate further misadventure. The State then sought a continuance because Officer Picchione, whom it said it was going to subpoena but did not, was not present for trial. Under these circumstances the metropolitan court was under no obligation to reward the State's inaction with a continuance. *See, e.g., State v. Peterson*, 103 N.M. 638, 642–43, 711 P.2d

915, 919–20 (Ct.App.1985) (holding that the trial court acted well within its discretion in denying a continuance where the court had previously warned that further delays would not be countenanced and where lack of preparation on the scheduled date of trial was due to counsel's own dilatoriness).

{19} The State's offer to proceed to trial without Officer Picchione was likewise without merit. Defendant advised the State and the court in the course of the prior proceedings and again at the final trial setting that he needed Officer Picchione's testimony for his defense. Defendant made an offer of proof, explaining that portions of Officer Picchione's police report stated that he had observed no signs of domestic violence, and because Officer Picchione's report differed in significant respects from the accounts of the State's other witnesses, his testimony was crucial for impeachment. Even the State acknowledged the potential exculpatory value of Officer Picchione's testimony to the defense. Therefore, proceeding to trial in Officer Picchione's absence would have resulted in prejudice to the defense. *See generally Mathis v. State,* 112 N.M. 744, 748, 819 P.2d 1302, 1306 (1991) (finding there to be a "substantial basis for supposing" that certain unavailable evidence "might undercut the prosecutor's case," thereby prejudicing the defense, and holding as a consequence that dismissal was appropriate).

**Duty to Subpoena**

{20} We conclude by addressing the State's argument that "it was not the State's duty to secure for the defense an apparently indispensable defense witness." The State's argument continues, "If Officer Picchione was a necessary defense witness, it was defense counsel's duty to subpoena Officer Picchione regardless of the prosecutor's assurances that Officer Picchione would be available on the date of trial." These assertions are without merit. At the December 13, 2005 trial setting, the State moved for a continuance because Officer Picchione was not present, and Defendant did not oppose the motion because he also required Officer Picchione's presence. The metropolitan court specifically inquired whether subpoenas were required, whereupon defense counsel stated that all witnesses required by the defense, including Officer Picchione, would be subpoenaed. However, the prosecutor specifically assured Defendant that the State would subpoena Officer Picchione, but it never did, and it apparently never told defense counsel that it did not. At the trial five months later on May 3, 2006, Officer Picchione was not present. The question is whether Defendant reasonably relied on the State's representation. Well-settled, existing precedent provides the obvious answer.

{21} In 1953, our Supreme Court adopted the following general rule concerning stipulations:

> The courts look upon stipulations with favor, and, as a rule, will enforce all stipulations of parties or their attorneys for the government of their conduct or the control of their rights in the trial of a cause or the conduct of litigation, if such stipulations are not unreasonable, not against good morals or sound public policy, are within the general scope of the case made by the pleadings, and are in such form as may be required by rule of court or statutory enactment. It is generally considered that stipulations which tend to expedite the trial should be enforced unless good cause is shown to the contrary.

*S. Union Gas Co. v. Cantrell,* 57 N.M. 612, 616, 261 P.2d 645, 647 (1953) (internal quotation marks and citation omitted). *Peay v. Ortega,* 101 N.M. 564, 565, 686 P.2d 254, 255 (1984) added, "Courts generally honor stipulations between the parties and uphold such agreements concerning trial of a cause or conduct of litigation if the stipulations are not unreasonable, not against good moral standards or sound public policy, and are within the general sense of the pleadings." We reiterated this standard for upholding stipulations in *Olguin v. Manning,* 104 N.M. 791, 792, 727 P.2d 556, 557 (Ct.App.1986). There was no basis for not enforcing the stipulation of the parties that the State would subpoena Officer Picchione.

## CONCLUSION

{22} The State's actions and inactions resulted in protracted, unnecessary delay. The State's actions also resulted in the unavailability of a material witness, and trial in his absence may have resulted in a denial of due process. With these concerns, the metropolitan court invoked its inherent authority to control its docket to insure that cases before it proceeded in a timely and orderly manner, and dismissed the prosecution. We conclude that the ruling of the metropolitan court was a reasonable course of action that was supported by the circumstances before it. Stated another way, the metropolitan court did not abuse its discretion. We further conclude that the district court did not correctly apply the standards to determine whether the metropolitan court abused its discretion, and it therefore erred in reversing the order of the metropolitan court. As a result of our conclusions, we need not address the remaining constitutional arguments that Defendant makes on appeal. The ruling of the district court is therefore reversed, and the case is remanded for reinstatement of the metropolitan court order of dismissal.

{23} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and CELIA FOY CASTILLO, Judges.