# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMCA-076

Filing Date: April 28, 2014

Docket No. 31,782

STATE OF NEW MEXICO, ex rel.
GARY KING, ATTORNEY GENERAL,

      Plaintiff-Appellant,

v.

ADVANTAGEOUS COMMUNITY
SERVICES, LLC, a New Mexico
limited liability company,

      Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Valerie A. Huling, District Judge

Gary K. King, Attorney General
Santa Fe, NM
Amy Landau, Assistant Attorney General
Albuquerque, NM

for Appellant

Lewis and Roca LLP
Jason C. Bousliman
Albuquerque, NM

for Appellee

## OPINION

**VIGIL, Judge.**

**{1}**    The district court dismissed the State's medicaid fraud claims against Defendant Advantageous Community Services, LLC, doing business as Imagine, LLC, (Imagine) after the State's investigator procured a false and fictitious document relating to a central issue

1

in the case. The investigator provided the document to the State's lawyer without disclosing that the document was false, and the lawyer then used it in a deposition of Imagine's owner and corporate representative. Concluding that the district court did not abuse its discretion, we affirm.

## I.   BACKGROUND

**{2}**   Imagine contracts with individual caregivers to provide home-based healthcare services to Medicaid recipients through the Medicaid Developmental Disabilities Waiver Program. New Mexico Department of Health (DOH) regulations require home-based healthcare providers like Imagine to submit criminal history screening applications to DOH for each of its caregivers. Once the criminal application is submitted, DOH then conducts a state and nationwide criminal background check.  Upon completion of the background check, DOH sends a "clearance letter" stating whether a caregiver has any reported disqualifying convictions. In its suit the State alleges that Imagine knowingly submitted bills for services provided by six caregivers whose criminal histories did not meet the screening requirements and that, therefore, Imagine violated the the Medicaid Fraud Act, NMSA 1978, §§ 30-44-1 to -8 (1989, as amended through 2004). According to the State, the Medicaid payments Imagine received from the State and paid to the six caregivers constituted overpayments, which the State had a right to recoup as damages, in addition to civil penalties.

**{3}**   The State compared the date on the clearance letter for each of the six caregivers to the date each caregiver was hired to support its claims that caregivers were providing services that were billed to Medicaid before DOH confirmed that they had a clear criminal history. Thus, the clearance letter issued for each caregiver is critical to the State's theory of liability. On the other hand, Imagine contends that DOH regulations permit caregivers to work under conditional supervised employment while DOH conducts the screening and that the regulations only require that criminal history screening applications be submitted for each caregiver within the first twenty days of employment. Therefore, according to Imagine, the dates Imagine submitted the criminal history screening applications and/or whether applications were submitted at all would have been relevant to whether any violations occurred, not the date on the clearance letters marking completion of the screening process.

**{4}**   The Assistant Attorney General (the AAG) prosecuting the case asked an investigator for the Attorney General's Office (the investigator) working in the medicaid fraud unit to prepare packets of documents relating to each of the six caregivers to be used at the deposition of Dr. Arminder Kaur, the owner and corporate representative of Imagine. She specifically asked the investigator to include a copy of the clearance letter from DOH for each caregiver to be included in the packet. However, the investigator was unable to locate copies of the actual clearance letters Imagine had previously produced for two of the caregivers, so he called Walter Rodas at DOH to see if DOH had copies. Mr. Rodas told the investigator that DOH did not keep hard copies of the letters on file, so the investigator asked Mr. Rodas to "reprint" copies of the 2006 clearance letters from its electronic data

base.

**{5}** Mr. Rodas told the investigator that it would not be possible to reprint accurate copies of the letters because the computer system had updated several fields in the clearance letter template. The investigator nevertheless told Mr. Rodas to go ahead and print the letters with the updated data. Mr. Rodas faxed the letters to the investigator with a cover sheet stating,

> Per your request, attached find copies of the clearance letters for [the two caregivers]. These letter[s] were issued for Imagine back in 2006. In addition to the discrepancies I mentioned to you already over the phone, our letter template pulls information current on our system. That is why the letters are issued and addressed to Melissa McCue, but she may have not been the contact person at Imagine back then. Also, the letters are signed by Gil Mendoza, but he was not the manager of this department in 2006; nor was Ms. Martinez the governor at that time either. Unfortunately, we do not have access to the original letters any longer and this is the best I can do to assist you from our computer records.

The investigator put the false letter in the packet for each caregiver and delivered the packets to the AAG. However, he left the fax cover sheet explaining that the letters were not authentic copies on his desk, and he did not tell the AAG that he had been unable to locate copies of the actual clearance letters that were sent to Imagine.

**{6}** One of the created letters is attached to this Opinion as Appendix 1, and a copy of the actual clearance letter sent to Imagine in 2006 for the same employee is attached to this Opinion as Appendix 2. Though the dates of the two letters are the same, and the "Control No." for the employee match, the letters are obviously otherwise very different.

**{7}** At Dr. Kaur's deposition she testified that, as far as she knew, Imagine was in compliance with the criminal history screening requirements at the time of the alleged violations. Her former business partner's son, Karan Sangha, and former employee, Diane Nunn, were in charge of ensuring compliance with the criminal history screening requirements, and they had assured her that Imagine was at all times in compliance. Dr. Kaur added that Karan Sangha and Diane Nunn later left to form their own home healthcare business, taking with them the documentary evidence of Imagine's compliance. After they left, Melissa McCue, another employee at Imagine, took over the caregiver criminal history compliance duties. When presented with Exhibit 15 (Appendix 1) and asked why it was addressed to Melissa McCue in October of 2006, Dr. Kaur's reaction was surprise. A clearance letter sent to Imagine in 2006 should have been addressed to Karan Sangha, and Exhibit 15 also had Imagine's new office address rather than the address it had in 2006.

**{8}** Imagine filed a motion for sanctions against the State for using a fabricated document at the deposition, as well as a motion for summary judgment on the merits. The district court

held an evidentiary hearing to address the motion for sanctions at which the foregoing facts were developed. The AAG also answered questions posed by the district court, denying that she knew the letter was false when she utilized it in the deposition and admitting she did not observe the discrepancy of the incorrect governor on the letterhead.

{9} The district court then filed detailed findings of fact and conclusions of law. In pertinent part, the district court made findings of fact that Exhibit 15 is a purported letter from DOH to Imagine, care of Melissa McCue, but it is a false document, and was created by the State for this litigation. Specifically, the text of the letter, the addressee, and the signature line are inaccurate. Further, the district court found, while the investigator was told that Exhibit 15 is not a true and correct copy of the original document, the investigator did not disclose that information to the AAG, and the AAG failed to observe the obvious discrepancy in the document that Susana Martinez was not the Governor in 2006, which would have alerted her that it could not be an accurate copy of a 2006 document. The district court added that the investigator knew the document was false and that it was going to be used at Dr. Kaur's deposition, but he did not disclose his knowledge to the AAG, who then attempted to impeach Dr. Kaur with the document. Importantly, the district court also found that, "[c]onsidering his position as an investigator for the Attorney General's Office, [the investigator]'s testimony that he did not believe the information was  important is not credible."

{10} All of the investigator's actions were done in the course and scope of his employment with the Attorney General's Office of the State of New Mexico. Moreover, the district court found, "[c]onsidering the immense power of the Attorney General's Office, the public must be able to rely on the truth of documents produced in litigation by the Attorney General's office, its attorneys and investigators" and that "[a]n investigator allowing an assistant attorney general to utilize a document known to be false in discovery is an egregious offense subject to sanctions."

{11} The district court accordingly concluded as a matter of law that "[d]ismissal of the Complaint is warranted as a sanction considering the egregious nature of the actions of the State's investigator." The district court also concluded that Imagine's motion for summary judgment should be granted. A formal order was entered dismissing the case with prejudice, and the State appeals. Because we affirm dismissal of the case as a sanction, we do not discuss the State's argument that the court erred in granting summary judgment.

## II.     DISCUSSION

### A.     Authority of the District Court to Dismiss as a Sanction

{12} Since at least 1939, our courts have asserted an inherent power, independent of any statute or rule, to regulate the proceedings before them, which includes imposing sanctions when appropriate. *See City of Roswell v. Holmes*, 1939-NMSC-062, ¶ 6, 44 N.M. 1, 96 P.2d 701 ("[I]t is an inherent right of the courts and therefore one existing independently of any

statute to dismiss a suit for failure to prosecute it with diligence."). This authority stems from "'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Beverly v. Conquistadores, Inc.*, 1975-NMCA-070, ¶ 6, 88 N.M. 119, 537 P.2d 1015 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)).

**{13}** In *State ex rel. New Mexico Highway & Transportation Department v. Baca*, 1995-NMSC-033, 120 N.M. 1, 896 P.2d 1148, our Supreme Court declared that "a court's inherent power is at the core of judicial authority," and reaffirmed that courts in New Mexico possess "inherent power to impose a variety of sanctions on both litigants and attorneys in order to regulate their docket, promote judicial efficiency, and deter frivolous filings." *Id.* ¶¶ 11, 20 (internal quotation marks and citations omitted); *see Lujan v. City of Albuquerque*, 2003-NMCA-104, ¶ 10, 134 N.M. 207, 75 P.3d 423 (stating the general proposition that courts have "authority to dismiss claims with prejudice for a party's failure to . . . comply with procedural rules or court orders"). Therefore, our Supreme Court concluded in *Baca*, a New Mexico court has inherent authority, independent of any statute or rule, to award attorney fees "in order to vindicate its judicial authority and compensate the prevailing party for expenses incurred as a result of frivolous or vexatious litigation." 1995-NMSC-033, ¶ 12.

**{14}** Historically, sanctions have been imposed most often in the context of misconduct associated with discovery. Dismissal of a complaint with prejudice was held to be warranted when a party willfully refused to obey a direct court order to supply the name of a witness. *Beverly*, 1975-NMCA-070, ¶¶ 7, 16. In addition, a default judgment against a party was upheld when a party failed to provide discovery "due to the willfulness, bad faith or fault of the disobedient party." *United Nuclear Corp. v. Gen. Atomic Co.*, 1980-NMSC-094, ¶ 202, 96 N.M. 155, 629 P.2d 231. In this context, our Supreme Court has declared that "willfulness" means "any conscious or intentional failure to comply therewith, as distinguished from accidental or involuntary non-compliance, and no wrongful intent need be shown to make such a failure willful." *Id.* ¶ 203 (alteration, internal quotation marks, and citations omitted); *see Reed v. Furr's Supermarkets, Inc.*, 2000-NMCA-091, ¶ 9, 129 N.M. 639, 11 P.3d 603 (discussing the requirements to justify dismissal as an appropriate sanction); *Gonzales v. Surgidev Corp.*, 1995-NMSC-047, ¶ 31, 120 N.M. 151, 899 P.2d 594 (stating that failure to comply with a court order only provides grounds for dismissal if the failure was due to willfulness, bad faith, or fault of the disobedient party); *Medina v. Found. Reserve Ins. Co.*, 1994-NMSC-016, ¶ 6, 117 N.M. 163, 870 P.2d 125 (stating that a finding of "willfulness" may be based on a "gross indifference to discovery obligations").

**{15}** Deception or reliance in fact by the other party is not a prerequisite to dismissal, and "the ultimate importance of the false or deceptive information" is not a requirement for dismissal. *Medina*, 1994-NMSC-016, ¶ 9. In *Reed*, we applied *Medina* and concluded that dismissal as a sanction for discovery abuse does not require: "(1) that the party seeking dismissal be deceived in fact or that the party relied on the misrepresentations; (2) that the information misrepresented be critical to preparation for trial; and (3) that dismissal be preconditioned upon the ultimate importance of the false or deceptive information." *Reed*,

5

2000-NMCA-091, ¶ 28 (internal quotation marks and citation omitted).

**{16}**     Importantly, our Supreme Court has held that attorney fees may be imposed against the State when it is a party because other considerations, such as the depletion of public revenues and the punishment of innocent taxpayers, "must be subordinate to a court's authority to control the parties and the litigation before it." *Baca*, 1995-NMSC-033, ¶ 25. Thus, in *Harrison v. Board of Regents*, we stated, "a court's inherent authority extends to all conduct before the court and to all parties appearing before the court, regardless of the party's status as a private litigant or as a governmental/public entity." 2013-NMCA-105, ¶ 16, 311 P.3d 1236, *cert. granted*, 2013-NMCERT-010, 313 P.3d 251. We therefore concluded that the district court in that case had inherent authority to impose a non-compensatory, punitive sanction against the board of regents, notwithstanding that it is a public entity. *Id.* ¶ 27.

**{17}**     From what we have said, it is apparent that the district court had inherent authority to dismiss the State's complaint with prejudice. We now turn to whether the district court properly did so.

## B.     Standard of Review

**{18}**     We review a district court's dismissal of a complaint for engaging in abusive litigation practices for an abuse of discretion. *See id.* ¶ 14 ("We generally review a district court's imposition of sanctions under its inherent power for an abuse of discretion.); *Reed*, 2000-NMCA-091, ¶ 10 (stating that we review dismissal of a complaint as a sanction for an abuse of discretion); *see also Baca*, 1995-NMSC-033, ¶¶ 11-12 (applying an abuse of discretion standard to review a district court's imposition of sanctions under its inherent power); *State v. Candelaria*, 2008-NMCA-120, ¶ 12, 144 N.M. 797, 192 P.3d 792 (reviewing the sanction of dismissal of a criminal case by a trial court under its inherent power for an abuse of discretion).

**{19}**     Under the abuse of discretion standard of review, we do not determine whether we, as a reviewing court, would have arrived at the same result as the district court. *See United Nuclear Corp.*, 1980-NMSC-094, ¶ 385; *Emerick v. Fenick Indus., Inc.*, 539 F.2d 1379, 1381 (5th Cir. 1976); *see also Candelaria*, 2008-NMCA-120, ¶ 12 (stating that appellate review of trial court's discretion does not turn on whether the appellate court would have arrived at the same result). Rather, we only determine "whether the trial court's decision is without logic or reason, or clearly unable to be defended." *Enriquez v. Cochran*, 1998-NMCA-157, ¶ 20, 126 N.M. 196, 967 P.2d 1136. Moreover, "[b]ecause the trial court's decision must be based on its conclusions about a party's conduct and intent, implicit in the standard of review is the question of whether the court's findings and decision are supported by substantial evidence." *Id.*; *see Reed*, 2000-NMCA-091, ¶¶ 24-25 (stating that in a hearing on a motion for discovery abuse sanctions, the district court sits as a fact finder). Thus, we review the evidence, and its inferences, in the light most favorable to the district court's decision. *See Candelaria*, 2008-NMCA-120, ¶ 12.

## C.    Analysis

**{20}**    On appeal, the State first contends that the created letters are not "false." The State attempts to minimize the obvious differences between the created letters and actual letters by asserting that the letterhead, addressee, signatory, and body of the letters are not "critical" fields. According to the State, the "critical" fields on the created letter relate to the caregiver: the name of the provider, the provider number, and the date of clearance. The State asserts that these fields remained the same in the 2006 copy and the 2011 "printout," that the information in the created letter was independently verifiable by Imagine through the online registry system, and that none of the updated fields in the letters "contained evidence relevant to the State's claims."

**{21}**    The State also argues that dismissal was an inappropriate sanction because its actions were not "willful." The State blames DOH's failure to keep copies of the 2006 letters and its computer limitations for its "mistake," asserting that the criminal history screening program's "inherent computer limitations and inability to 'reprint' exact copies of the original two 2006 [criminal history] clearance letters sent to Imagine" caused the "inadvertent error." The State asserts that "there was no testimony to support Imagine's contentions that [the investigator] intentionally fabricated and/or falsified [the letters]" blaming his lack of law office experience and training in evidence for causing the "inadvertent error."

**{22}**    We reject these arguments as contrary to the findings of fact made by the district court. The created letters were falsely represented as accurate copies of actual clearance letters sent to Imagine in 2006. A cursory visual inspection of the documents quickly discloses that they are not even close to being similar. Arguments about "critical" fields do not, and cannot, alter the undisputed fact that the State created, presented, and used a false document at the deposition of Dr. Kaur, the owner and corporate representative of Imagine, the defendant it was suing.[1] The State fails to appreciate that DOH's computer system limitations are not the issue. Rather, the issue is the consequence of the investigator instructing DOH to create the false documents, and knowing they were false, giving them to the AAG to use in the deposition without telling the AAG why or how the false document was created. The immediate consequence to Dr. Kaur was that after she testified in her deposition that former employees Karan Sangha and Diane Nunn were in charge of criminal history screening requirements for Imagine in 2006, she was confronted with one of the created documents and asked why it was addressed to someone else. The State seemingly overlooks the district court's explicit finding of fact that the investigator's testimony that he thought the information about the falsity of the letters was "not important" was "not credible," considering his position as an investigator for the Attorney General's Office. This

---

[1]The State does not contest the district court's conclusion of law that the investigator's actions were performed in the course and scope of his employment with the Attorney General's office.

finding is more than ample support to conclude that his actions were "willful."

**{23}** Finally, the State argues that Imagine was not entitled to a dismissal because the false exhibit "did not prejudice Imagine and/or adversely impact its ability to prepare for, and present its case at trial." This argument of a lack of prejudice overlooks our precedent. *See Medina*, 1994-NMSC-016, ¶ 9 (stating that deception or reliance in fact by the other party is not a prerequisite to dismissal, and "the ultimate importance of the false or deceptive information" is not a requirement for dismissal); *Reed*, 2000-NMCA-091, ¶ 19-20 (stating that dismissal as a sanction does not require that the other party be deceived in fact, that the information be critical to preparation for trial, or that dismissal be conditioned on the ultimate importance of the false or deceptive information).

**{24}** Moreover, if we were to accept the State's argument of no prejudice, a district court would be powerless to dismiss a case for misconduct during the pretrial discovery phase of a case. And that is clearly contrary to our well-settled precedent, which we have already pointed out, allows for sanctions, including dismissal with prejudice, for misconduct in discovery. Moreover, our Supreme Court has pointed out, "It would be ridiculous to allow a party who completely thwarts discovery to escape penalty simply because it could not be proven that other litigants were in fact deceived by such misconduct or actually relied upon it." *Medina*, 1994-NMSC-016, ¶ 9.

**{25}** Finally, the State's argument overlooks what took place here. Preservation of the integrity of the judicial process is crucial to ensuring that our courts can properly perform their constitutional duty. When conduct perverts the very process used by courts for ascertaining the truth, the core reason for their very existence evaporates. The constitutional integrity of our courts demands that no party may fabricate "evidence," represent it to be something which it is not, and then use it in connection with a judicial proceeding. When this occurs, the entire judicial system is "prejudiced," and dismissal with prejudice is warranted. *See United Nuclear Corp.*, 1980-NMSC-094, ¶ 397 (stating that the interest protected when a party has displayed a willful, bad faith approach to discovery is "to preserve the integrity of the judicial process and the due process rights of the other litigants"); *Harrison*, 2013-NMCA-105, ¶ 24 ("The policy behind a district court's inherent authority is the need to prevent abusive litigation practice and preserve the integrity of the judicial process."); *Reed*, 2000-NMCA-091, ¶ 9 ("'When a party has displayed a willful, bad faith approach to discovery, it is not only proper, but imperative, that severe sanctions be imposed to preserve the integrity of the judicial process and the due process rights of the other litigants.'" (quoting *United Nuclear Corp.*, 1980-NMSC-094, ¶ 397)); *Sandoval v. Martinez*, 1989-NMCA-042, ¶ 21, 109 N.M. 5, 780 P.2d 1152 ("[A] false response to a discovery request, unlike other violations of the discovery rules, is a clandestine violation" and that "[i]t is not enough to say that such a party will gain no advantage if the lie is uncovered.").[2] Such

---

[2]Other courts confronted with similar circumstances have reached the same result. In *Vargas v. Peltz*, 901 F. Supp. 1572, 1574-75, 1581 (S.D. Fl. 1995), the court utilized its

misconduct is so egregious that even a single instance warrants dismissal. *Beverly*, 1975-NMCA-070, ¶ 15 ("The fact that persistent misconduct provides the basis for dismissal does not mean that one instance of misconduct may not be sufficiently extreme to warrant dismissal.").

**{26}** We acknowledge that dismissal with prejudice is a severe sanction. However, the district court was presented with severe misconduct, prejudicial to the administration of justice. The circumstances are ironic in that the State was prosecuting a claim of fraud using created, false documents to do so. Under the circumstances, we cannot conclude that the district court abused its discretion in imposing the sanction of dismissal with prejudice.

**CONCLUSION**

**{27}** The order of the district court dismissing the State's complaint with prejudice is affirmed.

**{28}** **IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Judge**

**I CONCUR:**

_____

"firmly established" inherent power to dismiss the plaintiff's sexual harassment claim against the defendant when she produced panties to corroborate her substantive claim, and it was learned they were not even manufactured at the time of the alleged harassment. In doing so, the court referred to and relied upon *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-48 (1991) (stating that the inherent power of federal courts to impose sanctions extends to a full range of litigation abuses). *See Pope v. Fed. Express Corp.*, 138 F.R.D. 675, 677, 683 (W.D. Mo.1990), *aff'd in part,* 974 F.2d 982 (8th Cir. 1992) (stating that the plaintiff's action for sexual harassment was dismissed where the plaintiff manufactured an alleged note containing improper remarks from her supervisor); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (stating that the cause of action was dismissed for "fraud on the court" where the plaintiff attached a bogus agreement to the complaint); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (stating that a default was entered where the defendant engaged in an elaborate scheme involving perjury designed to willfully deceive the court); *Sun World, Inc. v. Lizarazu Olivarria*, 144 F.R.D. 384, 389-90 (E.D. Cal. 1992) (stating that default judgment was appropriate where the plaintiff submitted a false document and committed perjury in furtherance of fraud); *Eppes v. Snowden*, 656 F. Supp. 1267, 1279 (E.D. Ky. 1986) (stating that the defendant's answer and counterclaim were stricken where the defendant committed "fraud on the court" by producing backdated letters).

_____

**LINDA M. VANZI, Judge**

**MICHAEL D. BUSTAMANTE (specially concurring).**

**Bustamante, Judge (specially concurring).**

**{29}**    I concur in the Majority Opinion and most of its rationale.  I agree, for example, that the State should bear the consequences of the remarkably obtuse actions of its investigator in not informing the attorney in the case that the letters he included in the package were not exact duplicates of the letters issued in 2006.  The State's arguments trying to minimize the investigator's fault for what he did fly in the face of the record and the district court's finding of fact.

**{30}**    I write separately only because the Majority Opinion does not adequately address the State's argument that dismissal is too harsh a sanction absent a showing of prejudice to Imagine.  The Majority Opinion provides a partial response in ¶ 23, citing *Medina* and *Reed* for the proposition that actual deception and reliance need not be demonstrated in order to affirm dismissal as a sanction.  I agree with the proposition, but the question of prejudice here makes the outcome a close thing and in my view merits more detailed scrutiny.  The notions of actual deception and reliance are relevant to the question of prejudice, but do not necessarily displace the concerns inherent in the prejudice analysis.  *Reed*, after all, noted that "[n]onetheless, prejudice may be a factor for the district court to consider when evaluating the propriety of dismissal for discovery abuse."  *Reed*, 2000-NMCA-091, ¶ 28. *Reed* also noted that "the non-deceiving party must show that the misrepresentations were significant to the discovery process."  *Id.* ¶ 29.  I also believe that consideration of prejudice is the better practice in cases such as this because it prompts a broader review of the circumstances surrounding the events and the district court's decision.  This broader review would be of aid in assessing whether the offending party's acts suffice to meet the level of extraordinariness we look for when the ultimate sanction of dismissal has been imposed.  It would seem particularly appropriate in cases such as this where a single incident led to the sanction.

**{31}**    The State relies heavily on criminal cases discussing appropriate considerations for sanctions when the prosecutor has lost, destroyed, or withheld evidence.  *See Stat*e v. *Harper, 2*011-NMSC-044, ¶ 19, 150 N.M. 745, 266 P.3d 25; *State v. Bartlett*, 1990-NMCA-024, ¶ 4, 109 N.M. 679, 789 P.2d 627.  These cases are not helpful here if only because of the very different considerations inherent in the criminal law.

**{32}**    The State also relies on a civil prelitigation spoliation case which makes clear that prejudice to the opposing party should be considered when evaluating whether dismissal as a sanction is warranted.  *See Rest. Mgmt. Co. v. Kidde-Fenwal, Inc.*, 1999-NMCA-101, ¶ 13, 127 N.M. 708, 986 P.2d 504.  Though this case involved prelitigation destruction of evidence, its analytical framework was grounded in the inherent authority of the courts to

10

regulate their dockets, promote judicial efficiency, and deter frivolous claims. *Id.* ¶¶ 11, 12. Thus, the rationale underlying the existence and exercise of inherent powers—the necessity to be able to command the obedience of litigants and their attorneys in order to protect the integrity of the litigation process—has been applied to both prelitigation and litigation-based conduct. As such, consideration of prejudice to the non-offending party is also appropriate here.

**{33}** As suggested by *Kidde-Fenwal*, the State organizes its prejudice argument around the relevance of the evidence to the cause of action in the case and the effect the "created" documents might have on Imagine's ability to prepare and present its case. *Id.* ¶ 15. As noted in ¶¶ 2 and 3 of the Majority Opinion, the State and Imagine disagreed about when a caregiver could be hired and paid. The State maintained that caregivers could not be paid until they had cleared their criminal background screening. Imagine asserted that caregivers could be hired and paid pending completion of the screening process. Thus, for the State's purpose, the most salient information on the falsely reproduced letters was the identity of the caregiver and the date the approved screening issued. There is no issue that these "critical fields"—as the State terms them—were accurate.

**{34}** Based on the fact that the "critical fields" information was accurate, the State argues with some force that there could be no effect on Imagine's defense in any event. The State also asserts that once the error was discovered it agreed that the false letters would not be used for any purpose; thus there could be no prejudice shown. Viewed in isolation these arguments could be persuasive.

**{35}** But prejudice is not a controlling factor. Courts should also consider the degree of fault of the offending party. *Id.* ¶ 14. The district court clearly found great fault in the actions of the investigator. Courts should balance the degree of fault against the magnitude of prejudice in designing a sanction. *Id.* ¶ 17. If the reasonably potential effect of the offending party's action on the administration of justice is severe enough, the court can opt for the severest sanction to deter such conduct by others in the future. *Id.*

**{36}** I construe the district court's decision as a judgment by it that the creation and use made of the false, recreated letters was simply not to be tolerated. Given the "immense power" of the Attorney General and its position as the attorney for the State of New Mexico, I cannot disagree with the district court's conclusion. I conclude that this is one of those cases in which the degree of fault can fairly trump a showing of relatively minimal prejudice.

_____
**MICHAEL D. BUSTAMANTE, Judge**

11



| | Building a Healthy New Mexico! | Susana Martinez, Governor |
|---|---|---|

**Catherine Torres, MD**
**Cabinet Secretary Designate**

October 23, 2006

Ms. Melissa McCue
IMAGINE LLC
3876 Hawkiins NE
Albuquerque, NM 87109

RE:   Ms. THERESA L. MUTH
       Control No.: 149473

Dear Ms. McCue:

This letter is notice of a <u>clearance determination for employment</u> for THERESA L. MUTH as a caregiver in New Mexico.

The documentation submitted to the Caregivers Criminal History Screening Program was sufficient to issue this determination under the requirements as set forth in NM Department of Health rule 7.1.9 NMAC.

A copy of this clearance must be available for inspection as required by NM Department of Health rule 7.1.9.8 G NMAC.

Please contact our office if you have any questions.

Sincerely,

Gil Mendoza, Program Manager
Caregivers Criminal History Screening Program

| EXHIBIT | EXHIBIT |
|---|---|
| 3 | 15 |



"Assuring safety and quality of care in New Mexico's health facilities and community based programs."
Roger Gillespie, Acting Division Director • Division of Health Improvement
Caregivers Criminal History Screening Program • P.O. Box 26110 • Santa Fe, New Mexico 87502
TEL: (505) 476-0801 • FAX: (505) 424-7974 • http://dhi.health.state.nm.us

2HP0131

**Appendix 1**

12



**NEW MEXICO**
**HEALTH**

*Building a Healthy New Mexico!*

Michelle Lujan Grisham
Secretary

Bill Richardson   Governor

Jessica Sutin
Deputy Secretary

Jennifer Stone
Deputy Secretary

Duffy Rodriguez
Deputy Secretary

Katrina Hotrum
Division Director

October 23, 2006

Ms. Karan Sangha
HR Manager
IMAGINE, LLC
128 Quincy NE
Albuquerque, NM 87108

RE:   THERESA MUTH

149473

Dear Ms. Sangha,

This letter is notification, as required by the Caregivers Criminal History Screening Act, 29-17-2 to 29-17-5 NMSA 1978, that no disqualifying convictions were reported for the above referenced applicant or caregiver by the Federal Bureau of Investigations. This final clearance is based on information received through a nationwide and a statewide criminal history screening, using fingerprints and other information submitted for that purpose by the referenced applicant or caregiver.

A care provider who employs caregivers must maintain records for all employed caregivers, showing compliance with the Caregivers Criminal History Screening, Section 29-17-5(H) NMSA 1978. To satisfy such requirement, this letter of notification must be available for inspection as required by NM DOH Rule 7.1.9.8 NMAC for as long as the referenced applicant or caregiver remains in your employment.

If you have any questions or require additional information, please contact our office at (505) 827-1417.

Sincerely,

Santiago P. Sandoval, Program Manager
Caregiver Criminal History Program

2RP0132

*"Assuring safety and quality of care in New Mexico's health facilities and community based programs."*
Division of Health Improvement •1190 St. Francis Drive, N3078 • P.O. Box 26110 • Santa Fe, New Mexico, 87505-6110
(505) 827-1417 • FAX: (505) 827-1419

**EXHIBIT**
4

Appendix 2

13