This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40213**

**ANTHONY MCFARLAND,**

 Plaintiff-Appellant,

v.

**M.J. ELECTRIC, LLC; TAYLOR WIETING;**
**LAZY LIZARD, INC.; and BRANDON'S LLC**
**d/b/a LAZY LIZARD GRILL,**

 Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Lisa C. Ortega, District Court Judge**

Atler Law Firm, P.C.
Timothy J. Atler
Jazmine J. Johnston
Albuquerque, NM

Garrett & Smith Law
Aaron Garrett
Albuquerque, NM

for Appellant

YLAW, P.C.
Josh A. Harris
Albuquerque, NM

for Appellee M.J. Electric, LLC

McCoy Leavitt Laskey LLC
Stephanie K. Demers
Brandon M. Meyers
Lauren M. Swol

Albuquerque, NM

DeGraauw Law Firm PC
Andrew deGraauw
Wesley L. Enns
Chad D. Willis
Albuquerque, NM

for Appellee Taylor Wieting

Allen, Shepherd & Lewis, P.A.
Sebastian A. Dunlap
Albuquerque, NM

for Appellees Lazy Lizard, Inc. and Brandon's LLC d/b/a Lazy Lizard Grill

## MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}** Plaintiff Anthony McFarland appeals the district court's dismissal of his lawsuit with prejudice, pursuant to Rule 1-037(D) NMRA. Plaintiff's complaint sought damages for injuries he sustained as a passenger in a single-car rollover accident he alleges was caused by the negligence of Defendants M.J. Electric, LLC; Taylor Wieting; and Brandon's LLC, doing business as the Lazy Lizard Grill (collectively, Defendants). The district court found that Plaintiff repeatedly provided false answers in his deposition about his prior injuries, history of employment, and other topics relevant to the litigation, and that he did so willfully and in bad faith in order to minimize and conceal his preexisting medical conditions. Concluding that Plaintiff's false testimony undermined the integrity of the discovery process, and that dismissal was the appropriate sanction, the district court dismissed the case. Plaintiff appeals, claiming that the district court abused its discretion in refusing to impose a lesser sanction. He also contends that he did not engage in an extended pattern of discovery abuse, that his compliance with Defendants' later request for access to the records of his medical providers corrected his false answers, that there was no prejudice to Defendants because they were not deceived by and did not rely on his false answers, and that he did not interfere with the integrity of the discovery process. Concluding that the district court's findings are supported by substantial evidence in the record and are sufficient under New Mexico precedent to support the sanction of dismissal with prejudice, we affirm.

## BACKGROUND

**{2}** Plaintiff alleged that on February 5, 2017, Defendant Wieting and Plaintiff were traveling in a vehicle owned by Defendant M.J. Electric, Wieting's employer. According to Plaintiff, Wieting was driving while intoxicated, lost control of the vehicle, causing it to roll over multiple times. Plaintiff represented that his legs were pinned underneath the

vehicle, injuring Plaintiff's head, lower back, abdomen, legs, and neck. Plaintiff sued Wieting for negligence for driving while intoxicated, M.J. Electric for negligently entrusting the automobile to Wieting, and the Lazy Lizard Grill for negligently overserving Wieting in the hours prior to the accident.

{3}     Plaintiff's complaint was filed in February 2020. Shortly after answering the complaint, M.J. Electric began its discovery by deposing Plaintiff. During Plaintiff's eight-hour deposition, M.J. Electric asked Plaintiff about his history of injury prior to and after the rollover accident, and about his employment history, focusing on Plaintiff's employment in a number of physically demanding jobs, including bull riding.

{4}     M.J. Electric asked whether Plaintiff had suffered any neck, mid or lower back, shoulder, or other injuries prior to the rollover, and whether he had experienced any instances of loss of consciousness. Plaintiff admitted having suffered various injuries in the past, including a labrum tear, a broken left wrist while bull riding, a broken fibula from being stepped on by a bull, and an injury requiring head stitches. Plaintiff, however, omitted other more serious past injuries to parts of his body that he claimed were injured in the rollover accident, including injuries to his back, knee, hip, and thigh. For example, although disclosing an incident of a leg injury from being stepped on by a bull, Plaintiff did not disclose another incident where a bull fell on his back, injuring his neck and back. He also admitted having previously experienced loss of consciousness while horseback riding, but did not disclose that he had been knocked unconscious on at least two more recent occasions.

{5}     When asked whether he had been a professional bull rider, Plaintiff answered that he had only been an amateur, failing to disclose that he had been a registered professional bull rider for fifteen years. He failed to disclose that he had a series of video clips showing him bull riding. Defendants claimed that Plaintiff also lied in response to a question about whether there were any recreational activities that he could no longer engage in due to the injuries he suffered in the rollover accident. Plaintiff testified that he could no longer compete in body building due to injuries he suffered in the rollover accident. Plaintiff's Facebook page, however, showed that Plaintiff had "stepp[ed] back from body building" before the accident for other reasons. M.J. Electric also asked Plaintiff whether he had been involved in any other automobile accidents since the rollover accident. Plaintiff responded that he had not been in any other automobile accidents, omitting two recent accidents after the rollover.

{6}     Two months after Plaintiff's deposition, M.J. Electric served Plaintiff with a discovery request asking him to identify the medical providers for all conditions and injuries he suffered in the past, and to sign authorizations so that Defendants could obtain Plaintiff's medical records.1 Plaintiff responded to the request, and signed

---

1It was later discovered that Plaintiff may have not identified all of his medical providers in his response to the request for production, or in his response to one of Lazy Lizard's interrogatory questions. It appears that these alleged omissions were not brought to the attention of the district court and, therefore, were not preserved. In any event, the district court assumed, without deciding that the releases were comprehensive. Like the district court, we assume that the releases were comprehensive.

authorizations for the release of his medical records, as well as releases for his automobile insurance records. It is undisputed that M.J. Electric obtained Plaintiff's medical and insurance records with the authorizations provided to them in discovery. The medical records included Plaintiff's description to his doctors of his injuries, lab tests assessing the extent of his injuries, and records detailing the diagnosis and the treatment provided.

{7}     Following its review of Plaintiff's medical records and a search of the internet and other sources, M.J. Electric filed a motion to dismiss the lawsuit as a discovery sanction, pursuant to Rule 1-037(D). Defendants Wieting and Lazy Lizard Grill joined M.J. Electric's motion to dismiss. Defendants argued, based on Plaintiff's medical and automobile insurance records and its internet search, which included Plaintiff's Facebook page and a Crowdfunding request made on Plaintiff's behalf, as well as documents and publications from the rodeo association, that Plaintiff had provided false answers during his deposition regarding previous injuries causing low back pain, including at least one injury requiring back surgery, neck, shoulder, and other serious injuries requiring extended treatment; and about previous instances of loss of consciousness. Defendants introduced evidence of Plaintiff's false testimony denying that he had any automobile accidents after the accident at issue in this case. Defendants uncovered Plaintiff's registration as a professional bull rider from the relevant rodeo association, and determined he had ridden professionally for fifteen years. Defendants found Plaintiff's alcohol level on the night of the accident mentioned on the Crowdfunding webpage, contradicting Plaintiffs testimony that he had no knowledge of his alcohol level. Defendants located the timing and the reasons for his withdrawal from body building on Plaintiff's Facebook page. Defendants supported their motion to dismiss with copies of the medical and automobile insurance records they obtained using the authorizations provided by Plaintiff in response to M.J. Electric's request for production of documents, as well as print-outs from the internet, screen shots of Plaintiff's Facebook page, and reports and articles about Plaintiff's bull riding career.

{8}     In response to Defendants' motion to dismiss, Plaintiff claimed that he was not dishonest during his deposition. He argued that his incomplete and inaccurate answers to the questions about his medical history and injuries prior to the rollover accident were not deliberate lies, but arose from fatigue from a six-hour drive and an eight-hour deposition, from memory problems stemming from repeated head trauma, and from incipient COVID-19. He claimed poor questioning by M.J. Electric's counsel had confused him, and alleged that the early scheduling of his deposition before other discovery and the manner of questioning were purposely designed to trip him up and deceive the court about the accuracy of his answers. He claimed he did not lie about being an amateur bull rider; he merely disagreed with Defendants' definition of what it takes to be a "professional" bull rider. He denied that he "consciously, willfully or intentionally committed bad faith in an attempt to mislead [Defendants]."

{9}     The district court held a hearing on Defendants' motion to dismiss on October 21, 2021. At the completion of the argument, the court requested the transcript of Plaintiff's

deposition and the audio recording of the aftermath of the rollover accident, which Plaintiff claimed would show he was in extreme pain when emergency responders arrived. After reviewing these materials, the court entered an order granting Defendants' motion to dismiss Plaintiff's complaint with prejudice as a discovery sanction. The district court found that Plaintiff offered false testimony and that his misrepresentations on a variety of topics were intentionally made in order to create the impression that the crash-related injuries were the sole explanation for Plaintiff's current medical condition. The district court's order dismissing the case states, in relevant part:

> The [c]ourt recognizes that a dismissal with prejudice for discovery abuse is the most severe sanction available and, thus, exercises its authority with great caution. After closely considering the matter, the [c]ourt finds that Plaintiff offered false testimony on a variety of relevant topics to include other injuries and accidents, losses of consciousness, body building, shoulder pain[,] and bull riding. The [c]ourt finds that the false testimony that Plaintiff provided on those topics arose not out of mistakes or confusion on his part but, rather, out of willfulness and a callous disregard of his discovery obligations. After closely reviewing the testimony, the [c]ourt finds that the misrepresentations on the various topics were intentionally made to minimize and conceal serious prior injuries (and a subsequent auto crash) and a long-standing history of bull riding in order to create the impression that the crash-related injuries were the sole explanation for his alleged current medical condition. The [c]ourt also finds that the nature and pervasiveness of the false testimony rule out the possibility that Plaintiff misspoke or that his false testimony was caused by poor questioning by counsel.

> . . . .

> The [c]ourt finds that Plaintiff's false testimony undermined the integrity of the discovery process and, as a result, the appropriate sanction for such conduct is a dismissal of the [c]omplaint.

**{10}** Plaintiff filed a motion to reconsider. Plaintiff claimed that Defendants had not been deceived or misled, and that they had not suffered prejudice to their trial preparation because Plaintiff corrected any damage done by providing Defendants with "unfettered access" to his medical and automobile insurance records later during discovery. Plaintiff asked the district court to take into account that, since his deposition he had complied with his discovery obligations, and offered as an alternative lesser sanction allowing Defendants to depose him again, with Plaintiff paying the costs of the second deposition. Plaintiff pointed to the role played by what he described as M.J. Electric's strategy of taking an eight-hour deposition focused on Plaintiff's lengthy medical history without first seeking written discovery and medical records, a strategy Plaintiff claimed was designed to result in errors. Finally, Plaintiff again claimed that he had not lied, but that the omissions of prior injuries in his testimony were due to Chronic Traumatic Encephalopathy (CTE) and Post Traumatic Stress Disorder (PTSD),

attaching a letter from a health care provider Plaintiff claimed was not available prior to the motion for reconsideration. The district court denied the motion, excluding the letter from a health care provider as neither newly discovered nor competent evidence, a decision Plaintiff does not challenge on appeal. The district court rejected Plaintiff's claim that the execution of a medical release corrected all of his misrepresentations, pointing to the multiple topics in addition to prior accidents, injuries and medical conditions on which he gave false answers, and stating that the court remained convinced Plaintiff offered his false testimony in bad faith, "to create the impression that [his] crash-related injuries were the sole [cause of] his alleged current medical condition." The district court found that Plaintiff's subsequent production of medical releases did not excuse Plaintiff's false testimony or correct the damage to the truth-finding process. Plaintiff appealed.

## DISCUSSION

### I.      Rule 1-037 Governs the Imposition of Sanctions for Discovery Abuses

**{11}**    Defendants' motion to dismiss was brought under Rule 1-037(D). Rule 1-037 governs sanctions for discovery abuse. Rule 1-037(D) authorizes the district court to impose sanctions upon a party for failure to attend a deposition or to answer interrogatories. The sanctions available to the district court are found in Rule 1-037(B)(2). Dismissal is among the sanctions authorized by the rule. *See id.*

**{12}**    This Court has held that providing false answers to deposition questions "is akin to a failure to attend a deposition," and that the district court is, therefore, allowed to impose the same sanctions for false answers to deposition questions under Rule 1-037(D), as are allowed for false answers to interrogatories, including the sanction of dismissal in appropriate cases. *Reed v. Furr's Supermarkets, Inc.*, 2000-NMCA-091, ¶ 8, 129 N.M. 639, 11 P.3d 603 (alterations, omissions, internal quotation marks, and citation omitted).

### II.      The Standard of Review

**{13}**    "We review a district court's dismissal of a plaintiff's case for discovery violations for abuse of discretion." *Id.* ¶ 10; *see United Nuclear Corp. v. Gen. Atomic Co.* (*United Nuclear*), 1980-NMSC-094, ¶ 385, 96 N.M. 155, 629 P.2d 231  ("It is well-settled that the choice of sanctions under Rule [1-0]37 lies within the sound discretion of the trial court. Only an abuse of that discretion will warrant reversal." (footnote omitted)). "Under the abuse of discretion standard of review, we do not determine whether we, as a reviewing court, would have arrived at the same result as the district court." *State ex rel. King v. Advantageous Cmty. Servs., LLC* (*King*), 2014-NMCA-076, ¶ 19, 329 P.3d 738. We will reverse only when, after reviewing the whole record and the district court's reasoning, "we are left with a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Sandoval v. Martinez*, 1989-NMCA-042, ¶ 23, 109 N.M. 5, 780 P.2d 1152 (internal quotation marks and citation omitted); *see also Enriquez v. Cochran*, 1998-

NMCA-157, ¶ 20, 126 N.M. 196, 967 P.2d 1136 ("[W]e consider the full record to determine whether the trial court's decision is without logic or reason, or clearly unable to be defended.").

{14}    We are mindful in deciding a motion for sanctions for discovery abuse that the district court sits as the finder of fact. *See King*, 2014-NMCA-076, ¶ 19; *Reed*, 2000-NMCA-091, ¶¶ 24-25. To the extent the exercise of the district court's discretion depends upon the court's findings about a party's conduct and intent, we review the findings under the substantial evidence standard. *See Enriquez*, 1998-NMCA-157, ¶ 20; *Gonzales v. Surgidev Corp.*, 1995-NMSC-047, ¶¶ 33-34, 120 N.M. 151, 899 P.2d 594. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Allsup's Convenience Stores, Inc. v. N. River Ins. Co.</u>, 1999-NMSC-006, ¶ 28, 127 N.M. 1, 976 P.2d 1. We view the evidence and the inferences from the evidence in the light most favorable to the district court's decision. *See King*, 2014-NMCA-076, ¶ 19.

### III.    The District Court Did Not Abuse Its Discretion in Imposing the Ultimate Sanction of Dismissal

{15}    Plaintiff contends on various grounds that the district court abused its discretion. First, Plaintiff claims that when the record is considered as a whole, it does not support the district court's finding that he willfully concealed discoverable information. He claims that he corrected any misrepresentations made in his deposition by producing releases for all of his medical records. He argues Defendants were not deceived by his false statements and did not rely on them. He blames Defendants, claiming they sought strategic advantage from scheduling his deposition before they obtained medical records, inviting error. He asserts that there was no prejudice to Defendants' preparation for trial, or to the truth-finding process at trial because his false statements were made in the very early stages of the discovery process. Finally, he argues that the lesser sanction of requiring a second deposition paid for by Plaintiff, his proposal to the district court, would be effective in correcting any prejudice to Defendants or the court. Plaintiff's arguments ignore the substantial evidence standard of review that must be applied by this Court to the findings of fact underlying the district court's decision.

{16}    We begin by determining whether the district court's central finding of fact—that Plaintiff willfully and in bad faith, with the intent to mislead Defendants and conceal the truth, provided false answers to deposition questions—is supported by substantial evidence in the record as a whole. We find overwhelming support in the record for the district court's finding that Plaintiff's misrepresentations were made intentionally and in bad faith. As the district court points out, Plaintiff made many false statements, not merely one or two, thereby creating an inference that the misrepresentations were intentional. *See Reed*, 2000-NMCA-091, ¶ 22 (finding that the volume of the plaintiff's misrepresentations concerning her medical history demonstrated an intentional pattern of deception, relying on multiple instances of false or misleading answers to interrogatory and deposition questions). Plaintiff omitted serious prior injuries, especially those which affected his back, neck, ribs, or other parts of his body he claimed were

injured in the rollover accident. He did not disclose a shoulder injury that required surgery, while disclosing a minor injury to his wrist.

{17}    The evidence also supported the district court's determination that Plaintiff was not misled by Defendants' questioning. Defendants asked direct and clear questions. Plaintiff provided appropriate answers to many questions, showing he understood the question, for example, admitting a bull had once stepped on his leg, while omitting a much more serious incident where a bull fell on his back. He answered a direct question about whether he had been in any automobile accidents since the crash by denying that there had been any accidents since then, when his insurance records showed he had recently been involved in two accidents.

{18}    Under our standard of review, the evidence relied on by the district court is more than adequate to reasonably support the district court's conclusion that Plaintiff's false answers were both willful and in bad faith. We note that it is not enough for Plaintiff to convince this Court that another conclusion might have been possible from the evidence. "We review the evidence, and [the] inferences, [from the evidence] in the light most favorable to the district court's decision." *King*, 2014-NMCA-076, ¶ 19. We, therefore, accept the district court's conclusion that Plaintiff's misrepresentations were both willful and in bad faith.

{19}    Plaintiff next claims that his misrepresentations, even if willful at the time they were made, were not "significant" enough to justify the ultimate sanction of dismissal. He argues that he did not conceal what he describes as "the important, 'big picture' information" needed to test the truth of his injury claims, and that his subsequent compliance with M.J. Electric's request for releases for his medical records corrected any misrepresentations. He claims that Defendants were not deceived by and did not rely on the misrepresentations, that his false deposition answers did not interfere with Defendant's trial preparation or with the ability of Defendants, the court, and ultimately the jury, to ascertain the truth.

{20}    We view these arguments in two ways (1) as a claim that the record as a whole does not support a finding of prejudice to Defendants or to the integrity of the court, or at least not prejudice severe enough to justify the ultimate sanction of dismissal; and (2) that Plaintiff's subsequent participation in discovery was evidence that the deposition testimony was not intended to deceive. The foundation of Plaintiff's argument is his claim that he quickly corrected his misrepresentations early in the discovery phase of the case, avoiding any prejudice to the opposing party, showing his "lack of intent to undermine the discovery process," and restoring the truth-finding process and preserving the integrity of the court. Plaintiff, however, does not acknowledge or address in his brief the district court's finding rejecting his claim to have corrected his false testimony. Plaintiff made the argument he now raises on appeal to the district court in his motion for reconsideration. In its order denying this motion, the court found that, even assuming the medical releases revealed the preexisting medical conditions Plaintiff omitted in his answers to deposition questions, he had done nothing to correct what the court had found in the original order to be multiple misrepresentations "on a

variety of topics," including his history of bull riding, and his reasons for ending his body building. Plaintiff minimizes the relevance of these misstatements as having "no bearing on the issues in this case," but the district court determined that viewed as a whole, all of the misstatements "rule[d] out the possibility that Plaintiff simply misspoke or that his false testimony was caused by poor questioning by counsel." These statements in particular, were designed to "create the impression that the crash-related injuries were the sole explanation for his alleged current medical condition." Our review of the record provides support for these findings. There is no evidence in the record, and Plaintiff does not contend on appeal, that he disclosed or corrected these other misrepresentations. To the contrary, the evidence supports the district court's finding that a number of misrepresentations remained uncorrected, the truth discovered only through Defendants' independent research. Moreover, Plaintiff reviewed and signed his deposition without noting or correcting any of the falsifications in the testimony. Even with the information obtained through the releases for medical providers' records, the falsifications were uncovered only by Defendants' independent review of the records.

{21}   This evidence is sufficient to support the district court's underlying factual finding that Plaintiff did not fully correct the misrepresentations by his subsequent production of medical releases and to support, as well, the district court's rejection of Plaintiff's proposed lesser sanction: allowing Plaintiff a redo of his deposition with the cost paid by Plaintiff. Plaintiff's persistence in arguing that he had not intentionally misrepresented anything, blaming fatigue, improper questions by Defendants, head injuries, and illness on the day of the deposition, hardly justifies confidence that Plaintiff could be believed in a second deposition or that all of the misrepresentation made by Plaintiff had been discovered by the defense.

{22}   The district court's conclusion that Plaintiff's misrepresentations had, in fact, prejudiced the truth-finding process and the integrity of the court, and that lesser sanctions would not be effective is supported by our precedent. Plaintiff claims that the district court was required to find that Defendants were in fact deceived by or relied on Plaintiff's false answers. This argument overlooks the holding of *Medina v. Foundation Reserve Insurance Co.*, that proof of actual reliance or deception in fact as to discoverable information is not a prerequisite to the sanction of dismissal. *See* 1994-NMSC-016, ¶ 9, 117 N.M. 163, 870 P.2d 125 ("It would be ridiculous to allow a party who completely thwarts discovery to escape penalty simply because it could not be proven that other litigants were in fact deceived by such misconduct or actually relied upon it."). Nor must this Court accept a plaintiff's explanations for false answers when those explanations were rejected by the district court. *See Reed*, 2000-NMCA-091, ¶ 33 ("Because we review for abuse of discretion, [the p]laintiff's argument that she misunderstood the nature and extent of [the defendant]'s questions, [or that her discovery responses were not false,] is an insufficient basis to reverse the district court's order of dismissal.").

{23}   Finally, the district court is also not required to impose a lesser sanction before turning to the sanction of dismissal. *Id.* ¶ 10 ("[D]espite the severity of dismissal as a sanction, the district court is not required to impose lesser sanctions before it imposes

the sanction of dismissal." (internal quotation marks and citation omitted)). Where, as is the case here, the district court's finding of willful, bad faith conduct and callous disregard for discovery obligations is supported by substantial evidence in the record, and substantial evidence in the record also supports the court's findings of prejudice to the discovery process and to the integrity of the court, "[i]t is not our responsibility as a reviewing court to say whether we would have chosen a more moderate sanction." *United Nuclear*, 1980-NMSC-094, ¶ 385 (internal quotation marks and citation omitted).

**CONCLUSION**

**{24}** For the reasons stated, we affirm.

**{25} IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**KATHERINE A. WRAY, Judge**